
UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 10-40012 |
| Plaintiff, | \* | |
| vs. | \* | REPORT AND RECOMMENDATION |
| | \* | 1. Motion to Dismiss (Doc. 18) |
| LEO THOMAS FLYNN, | \* | 2. Motion to Suppress (Doc. 19) |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending are Defendant's Motions to Dismiss (Doc. 18) and Motion to Suppress (Doc. 19). A hearing was held on Monday, March 8, 2010. Defendant was personally present and represented by his counsel of record, Mr. Rory Durkin and Mr. Mike Butler. The Government was represented by Special Assistant United States Attorney Richard Newberry. ICE Agent Charla Aramayo testified at the hearing.[1] One Exhibit (a copy of a packet including the search warrant application, the supporting affidavit, the warrant and the return) was received into evidence. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motions to Dismiss (Doc. 18) and to Suppress (Doc. 19) be **DENIED**.

---

[1] Agent Aramayo was prepared to testify to the foundation for EX 2, the recording of Defendant's oral statement given the day of the search warrant. After Aramayo stated her name and occupation, the Government decided to withdraw its offer of EX 2. The factual background for this opinion is therefore gleaned from EX 1 and the information presented by the parties' attorneys during the evidentiary hearing. A transcript of the hearing has been filed with the Clerk as Doc. 26.

## JURISDICTION

Defendant is charged in an Indictment with Distribution of Child Pornography (2 counts) in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) and Possession of Child Pornography (1 count) in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). The pending Motions to Dismiss and to Suppress were referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated November 29, 2006.

## FACTUAL BACKGROUND

ICE (Immigration and Customs Enforcement) Special Agent Charla Aramayo actively investigates child pornography crimes in South Dakota. Her duties include working in cooperation with the South Dakota Internet Crimes Against Children (ICAC) Task Force. Minnehaha County Sheriff's Deputy Derek Kuchenreuther is also a member of the ICAC Task Force, as is Sioux Falls Police Detective Sean Kooistra. EX 1, Affidavit, p.1-2. All three individuals have training and experience in child pornography related matters including internet and peer-to-peer techniques of distributing child pornography images. *Id.*

On June 2, 2009, Kuchenreuther was working undercover using a peer-to-peer program when he located an IP address (71.38.24.63) that was offering to traffic in the distribution of child pornography. EX 1, affidavit p.5, ¶ 22. Kuchenreuther obtained a list of files available for download and observed several files containing sexually explicit file names suggestive of child pornography. *Id.* Kuchenreuther subsequently subpoenaed relevant records and learned that the IP address was issued to Brian Ahrendt, Attorney at Law, 3101 W. 41st St. Suite 214. *Id.* at p. 6. Kuchenreuther forwarded the information to Agent Aramayo. Aramayo determined that three attorneys have offices located at the same address. *Id.* ¶ 23. Agent Aramayo sent ruse emails to all three attorneys (Defendant, Ahrendt and John Pekas) in an attempt to identify the IP address used by each lawyer and to determine whether they share Internet service or whether each has his own Internet service account. EX 1, affidavit at p.6 ¶ 25. She received replies from Ahrendt and Pekas, which indicated they shared an IP address (71.209.113.184) which was different from the one that had been offering child pornography on June 2, 2009. *Id.*

2

Agent Aramayo forwarded the IP address 71.209.113.184 to Detectives Kooistra and Kuchenreuther. Detective Kooistra informed Aramayo that on June 30, 2009, a computer with that IP address was offering to participate in the trafficking of child pornography, and that Kooistra had downloaded child pornography from a computer with that IP address as well. *Id.* at ¶ 26. On June 30, 2009, Kooistra downloaded four videos from IP address 71.209.113.184. After downloading the videos, Kooistra viewed them and observed images consistent with the exploitation of children. *Id.* On July 2, 2009 Kooistra subpoenaed records regarding IP address 71.209.113.184. He learned that the account holder for the relevant time was Brian Ahrendt at 3101 W. 41st Street, Suite 214. *Id.* at ¶ 27. On July 6, 2009, Kooistra notified Aramayo that a computer using IP address 71.209.113.184 was again connected to peer-to-peer software.[2] Aramayo drove to the office suite shared by Defendant, Ahrendt and Pekas. She entered the office and pretended to be a client looking for a lawyer. EX 1, affidavit p. 7, ¶ 28. She observed all three attorneys in their offices. Attorney Ahrendt told her all three attorneys were independent and shared the office, but did not have a secretary. Aramayo was present in the office for about twenty-five minutes. Kooistra later informed her that a computer within the office was connected to a peer-to-peer file sharing application and offering to traffic in the distribution of child pornography while she (Aramayo) was present in the law office suite. *Id.*

On July 8, 2009, Kooistra provided Aramayo with a copy of his report and a CD which contained the videos Kooistra had downloaded from IP 71.209.113.184 on June 30, 2009. The affidavit in support of the search warrant lists the titles of the videos and contains Aramayo's brief description of their contents. It is sufficient to say the titles alone would alert a person that the content of the videos could be illegal. The titles of both videos contain the word "illegal." *See* EX 1, affidavit p. 7, ¶ 29.

Aramayo's affidavit in support of the search warrant, presented on July 10, 2009, stated in one of its final paragraphs that her investigation had "revealed that a computer located at 3101 W.41st Street, Suite 214 . . .contains images and/or movies of known child pornography. Based on

---

[2]EX 1 to Defendant's Motion to Suppress (Doc. 19) indicates the peer-to-peer software was "LimeWire."

my knowledge, training and experience, I have concluded there is probable cause to believe that an individual at that address has used a computer and the Internet to receive, possess and/or distribute images of child pornography, which would constitute violations of Title 18 U.S.C. 2252 and Title 18 U.S.C. 2252A." The application for the search warrant requested, and the search warrant granted, permission to search "any and all" computers present at 3101 W.41st Street, Suite 214. The application also requested, and the search warrant granted, permission to search the vehicles of all three attorneys who shared offices at 3101 W.41st Street, Suite 214. Because the search would be conducted on the computers of three practicing lawyers, the search warrant specifically provided that two separate search teams should be involved and that criminal client files (state or federal) could not be searched by either team. EX 1, Warrant, Attachment C. There is nothing in the record which indicates that Aramayo knew before the search was conducted which computer contained the subject images, or to which lawyer the suspect computer belonged.

## DISCUSSION

### Burden of Proof

"An indictment which is regular on its face, returned by a legally constituted grand jury, is presumed to be founded on competent evidence and a heavy burden is placed on the one who seeks to overcome the presumption." *United States v. West*, 549 F.2d 545, 554 (8th Cir. 1977). Additionally, to become entitled to an evidentiary hearing to attack the veracity of a search warrant affidavit, the defendant must "allege deliberate falsehood or reckless disregard for the truth, and support the allegations with an offer of proof." *United States v. DeBuse*, 289 F.3d 1072, 1074 (8th Cir. 2002) (citation omitted). The burden of proof is on the defendant who seeks to suppress evidence. *United States v. Phillips,* 540 F.2d 319 (8th Cir.1976). The standard of proof is a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

1. **Motion to Dismiss (Doc. 18)**
   A. **Tenth Amendment**

Defendant asserts that 18 U.S.C. § 2252 as applied to him violates the Tenth Amendment to the United States Constitution. The Tenth Amendment provides: "The powers not delegated to

the United States by the Constitution, nor prohibited to it by the States, are reserved to the States respectively, or to the people."

Defendant's theory is that because 18 U.S.C. § 2252 purports to prohibit all persons, including attorneys, from possessing and distributing child pornography, the federal government has "unconstitutionally interfere[d] with the power of South Dakota to regulate the legal profession." Doc. 18 at p.2. Defendant cites *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 460 (1978) which states:

> The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice and have historically been 'officers of the courts.'

*Id.* Defendant also cites SDCL § 22-24A-19. This statute provides immunity to attorneys against state prosecution for state child pornography crimes if the attorney's conduct is in "the performance of official duties." That statute provides:

> **SDCL 22-24A-19. Child sexual exploitation laws inapplicable to certain official duties.**
>
> The provisions of §§ 22-19A-1, 22-24A-1 to 22-24A-20, inclusive, 22-24B-1, 23A-27-14.1, and 43-43B-1 to 43-43B-3, inclusive, do not apply to the performance of official duties by any law enforcement officer, court employee, attorney, licensed physician, psychologist, social worker, or any person acting at the direction of a licensed physician, psychologist, or social worker in the course of a bona fide treatment or professional education program.

Defendant asserts he is a "criminal defense attorney who specializes in representing persons accused of pedophilia and other sex crimes against children."[3] He further asserts that in the course of his practice, he had clients who sought his advice about whether particular websites contained material which constituted child pornography. He claims that in order to properly advise his clients he would access the website on his office computer and "analyze the website's contents and render an opinion about whether the particular website contained pornography." Doc. 18. at p. 3.

---

[3]During the evidentiary hearing, defense counsel offered that Defendant is known in his office as "the Perv's Lawyer."

5

1. **18 U.S.C. 2252 Does Not Violate the Tenth Amendment Because it is a Valid Exercise of the Commerce Clause**

The Tenth Amendment reserves to the states powers not vested by the Constitution in the federal government. "It is settled beyond peradventure that if Congress properly acts pursuant to one of its enumerated powers, its work product does not offend the Tenth Amendment." *United States v. Meade*, 175 F.3d 215, 224 (1st Cir. 1999), *citing Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991).

Congress has the power under the Commerce Clause to regulate "activities that substantially affect interstate commerce as well as the channels and instrumentalities of interstate commerce." *United States v. Mugan*, 441 F.3d 622, 627 (8th Cir. 2006) (punctuation altered), *citing United States v. Lopez*, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The Eighth Circuit has repeatedly recognized the federal child pornography statutes as a valid exercise of Congressional authority under the Commerce Clause. *See Mugan, Id.; United States v. Betcher*, 534 F.3d 820, 824-25 (8th Cir. 2008). It is therefore beyond doubt that § 2252 does not violate the Tenth Amendment. *United States v. Meade*, 175 F.3d 215, 224 (1st Cir. 1999), *citing Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991).

That the federal child pornography statutes incidentally regulate the conduct of attorneys along with the rest of the general population does not change the result. *See, e.g. Ellen S. v. Florida Bd. Of Bar Examiners*, 859 F.Supp. 1489, 1494-95 (S.D. Fla. 1994)(Tenth Amendment does not prohibit application of ADA to state bar licensing procedures); *Blevins v. Hudson & Keyse, Inc.*, 395 F.Supp.2d 655, 660-661 (S.D. Ohio 2004) (Fair Debt Collection Act does not violate Tenth Amendment; attorneys who collect debts must comply with Fair Debt Collection Act because "there is nothing in the statute that purports to regulate the practice of law, only the practice of debt collection."); *State of Tennessee v. Lexington Law Firms*, 1997 WL 367409 (M.D. Tenn. 1997) (Telemarketing and Consumer Fraud and Abuse Prevention Act if construed as applicable to attorneys did not violate Tenth Amendment). "Thus, despite the Supreme Court's recognition that regulation of the practice of law has traditionally been the exclusive province of the states . . . . Congress may constitutionally regulate attorney conduct provided that such regulation falls within

its enumerated authority under the commerce clause." *Id.* at *7. Defendant does not vigorously argue that Congress exceeded its Commerce Clause authority when it enacted the federal child pornography statutes under which he is being prosecuted. Accordingly, his Tenth Amendment argument must fail.

### 2. Defendant Lacks Standing to Raise a Tenth Amendment Challenge.

Standing is a jurisdictional requirement. *United States v. Hacker*, 565 F.3d 522, 526 (8th Cir. 2009). In *Hacker*, the Eighth Circuit unequivocally held that "a private party does not have standing to assert that the federal government is encroaching on state sovereignty in violation of the Tenth Amendment absent the involvement of a state or its instrumentalities." *Id.* Defendant asserts that because he is an attorney who is licensed to practice law in South Dakota, he therefore sufficiently "represents" or alternatively that his interests are sufficiently "aligned" with the State to transform him from a private citizen into an official spokesperson for the State of South Dakota, endowed with sufficient authority to mount a constitutional challenge against a federal statute on its behalf. No precedent has been cited to support the proposition and none has been found. Pursuant to *Hacker*, Defendant lacks standing to raise a Tenth Amendment challenge to 18 U.S.C. § 2252.

### B. First Amendment

Next, the Defendant asserts 18 U.S.C. § 2252 is unconstitutionally overbroad. He asserts the statute is overbroad on its face (1) because it prohibits important, socially accepted First Amendment expression, i.e. giving legal advice; (2) because it requires a lawyer to prove his speech (possession/distribution of child pornography) is lawful on a case by case basis which in turn raises "serious constitutional issues regarding fairness and due process" and (3) because the statute is unconstitutional as applied to him, as an officer of the court engaged in "core political speech."

### 1. 18 U.S.C. § 2252 Is Not Unconstitutionally Overbroad and Does Not Facially Prohibit Important, Socially Accepted, First Amendment Expression.

The Government correctly notes that it has long been allowed to prohibit the production, distribution, and possession of child pornography. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98

(1990). The Supreme Court upheld the constitutionality of the Child Pornography Prevention Act, including 18 U.S.C. § 2252, except for 2256(8)(B) and (D) (not applicable here), which were struck down. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). Defendant notes that more than half the states (including South Dakota) have some form of exception to their child pornography statutes for different valid purposes. "These exceptions focus mainly on literary, artistic, political, legal, therapeutic, law enforcement, judicial or scientific purposes." Doc. 18 at. p. 6. Defendant asserts "there is no exception to the federal law as written for any of these." *Id.* Defendant fails to acknowledge, however, the exception in federal law under 18 U.S.C. § 3509(m). This statute requires that child pornography must be made "reasonably available" to defendants, their attorneys and experts for review, but nonetheless does not allow defendant's lawyers or defendant's experts to possess the child pornography. This statute (part of the Adam Walsh Act) has survived constitutional challenge time and time again. *United States v. Flinn*, 521 F.Supp.2d 1097, 1102 (E.D. Ca. 2007); *United States v. Gaynor*, 2008 WL 113653 (D. Conn. 2008); *United States v. Johnson*, 456 F.Supp.2d 1016 (N.D.Ia. 2006); *United States v. Doane*, 501 F.Supp.2d 897, 901 (E.D. Kentucky 2007); *United States v. McNealy*, 2008 WL 4372388 (S.D. Miss.); *United States v. Spivack*, 528 F.Supp.2d 103, 106-07 (E.D.N.Y. 2007). Defendant's facially overbroad argument fails.

### 2. Requiring Attorneys to Demonstrate Their Possession/Distribution of Child Pornography is Lawful on a Case-By-Case Basis is Constitutional

Defendant asserts that to require an attorney to prove his possession or distribution of child pornography is for the purpose of "official duties" pursuant to SDCL 22-24A-19 (instead of requiring the government to prove a violation of 18 U.S.C. § 2252) "unfairly shifts the burden to him and places him in an almost lose-lose situation." Doc. 18 at p. 8. A case-by-case analysis, however, is exactly what the United States Supreme Court has suggested should be applied to statutes which may be occasionally overbroad although not facially overbroad. "Particularly where conduct and not merely speech is involved . . . whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which it sanctions, assertedly, may not be applied." *Broadrick v. Oklahoma*, 413 U.S. 601, 615-16, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). There has been no

court interpretation of § 2252 that gives lawyers, solely by virtue of their license to practice law, a carte blanche *constitutional* right to possess and to distribute child pornography. In order to lawfully possess or distribute child pornography a lawyer must demonstrate that the possession or distribution is authorized by some applicable law, e.g. in the "performance of official duties" as in South Dakota.

It is Defendant's right to deny that his alleged possession and distribution of child pornography was in violation of 18 U.S.C. § 2252, but he must demonstrate more than his membership in the South Dakota Bar Association to successfully defend against the charge. *See e.g., United States v. Parker*, 267 F.3d 839 (8th Cir. 2001) (defendant asserted his reason for possessing child pornography was honorable; held an issue for the jury);[4] *United States v. Mullen*, 2008 WL 5082859 (W.D. Mo.) (defendant asserted his receipt and possession of child pornography was not criminal; held "these issues are for the jury to decide based on the evidence presented at trial."); *United States v. Vaughn*, 2008 WL 4104241 (E.D. Cal.) (defendant, a former police detective, charged with possession and receipt of child pornography—defendant's claim that he possessed materials as part of his job duties presented to the jury with appropriate jury instruction).

### 3. 18 U.S.C. § 2252 As Applied to Defendant Engaged in "Core Political Speech" is Constitutional

"The Supreme Court has recognized that some profit-directed speech, such as legal or medical advice, is entitled to constitutional protection." *Wine and Spirits Retailers, Inc. v. State of Rhode Island*, 418 F.3d 36, 47 (1st Cir. 2005) *citing Bd. of Trustees of State Univ. Of N.Y. v. Fox*, 492 U.S. 469, 482, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). In *Wine and Spirits* the Court noted that it need not determine whether and to what extent the business advice at issue "fits within this taxonomy. The plain, hard fact is that [the subject statute] simply does not prohibit the communication of advice between a franchisor and the holders of Class A liquor licenses." *Wine and Spirits*, 418 F.3d at 47.

---

[4]"The defendant does not have to testify or even offer any evidence; the basis for the defendant's theory may derive from the testimony of government witnesses on direct or cross-examination." *Id.* at 843, quoting from *United States v Scout*, 112 F.3d 955, 960 (8th Cir. 1997).

Defendant asserts that 18 U.S.C. § 2252 unconstitutionally interferes with his "core political speech" because "without the ability to investigate and research an attorney would be unable to render a legal opinion." Doc. 18 at p. 10. Defense counsel made an offer of proof during the evidentiary hearing in an effort to establish that the "LimeWire" files discovered on the internet were a part of Defendant's protected "core political speech." TR at 20. Counsel offered that:

> Mr. Flynn received a call from a truck driver on at least one occasion, and he received several phone calls with respect to the investigation of child pornography on LimeWire type websites. Mr. Flynn would then testify that he went, to properly advise his client, he went on to LimeWire and investigated those very things so he could render a legal opinion to that particular client. That's what he would testify to. Then once he examined those images, uninstalled LimeWire from his computer.

At this juncture a review of the established authority regarding the nature of LimeWire is appropriate.

> LimeWire is a peer-to-peer file sharing application that connects users who wish to share data files with one another. It is indifferent to the nature of the data-images or text or music or video or software. It is equally indifferent to the legal status of the data–public domain or copyrighted or contraband. LimeWire combines two functions: the ability to search for and download files from other users, and the ability to make files on one's own computer available to other users. When a user wants to download files from other users, he launches LimeWire and inputs a search term or terms. The application then seeks matches for those terms in the file names and descriptions of all files designated for sharing on all computers then running the LimeWire application. LimeWire will then display a list of file names that match the search terms, and the user can select one or more of those to begin downloading the files.
>
> Several federal courts have rejected the argument that an individual has a reasonable expectation of privacy in his or her personal computer when file sharing software, such as LimeWire, is installed.

*United States v. Stults*, 575 F.3d 834, 842 (8th Cir. 2009) (citations omitted, punctuation altered).

Also helpful is the explanation contained in *United States v. Lewis*, 554 F.3d 208, 212 (1st Cir. 2009).

> When it is first installed, LimeWire creates a folder named 'Shared' on the user's computer. By default, any file placed in that 'Shared' folder is available to anyone else on the Internet who uses the LimeWire application. Also by default, any file a user downloads through LimeWire is automatically placed in that 'Shared' folder and is therefore offered by that user for further downloads by other users. These default behaviors can be changed by the user: a user could turn off sharing altogether, designate another folder with a different name to serve as the 'Shared' folder,

manually remove files from the 'Shared' folder (or whatever folder had been designated) and prevent them from being shared on an individual basis.

*Lewis*, 554 F.3d at 842.

In *Stults*, the Eighth Circuit held that the defendant had no reasonable expectation of privacy in his computer, even though he claimed he did not understand that installing LimeWire would allow others to access his computer files. "One who gives his house keys to all of his friends who request them should not be surprised should some of them open the door without knocking." *Id.* at 843. The Court stated the defendant "opened up his downloaded folder to the world, including [the FBI]." *Id.* Indeed, the Ninth Circuit has noted, "to argue that [Defendant] lacked the technical savvy or good sense to configure LimeWire to prevent access to his pornography files is like saying that he did not know enough to close his drapes." *United States v. Ganoe*, 538 F.3d 1117, 1127 (9th Cir. 2008).

The definition of child pornography found in 18 U.S.C. § 2256 is clear and concise. Defendant has not made an adequate showing that as applied to him, 18 U.S.C. §2252 infringe upon his First Amendment right to give legal advice to his clients. Defendant's theory is that as an attorney, his ability to conduct legal research by viewing child pornography and exercise his First Amendment right to advise his clients accordingly must be protected. Defendant is charged, however, not only with possessing, but also with *distributing* child pornography. As is made clear by the search warrant affidavit, the material in question was allegedly placed in a "shared" file of LimeWire, a peer-to-peer program which makes selected contents of one's computer available to the public, i.e. to whomever on the internet also has the LimeWire program and chooses to access the "shared" files of others. As the above explanations of LimeWire illustrate, Defendant has not explained why, under any scenario, his First Amendment right to privately give legal advice to a client should render private his posting of his "legal research" in a shared LimeWire file which is accessible by and available to the general public.

Defendant has not shown that his prosecution under 18 U.S.C. §§ 2252 is barred by the First or Tenth Amendments to the United States Constitution. Although the caption and introduction to Doc. 18 refer to a lack of probable cause "to believe that Mr. Flynn violated any law," Defendant's

brief does not address the insufficient probable cause argument separate from the arguments about unconstitutionality. To the extent the argument about a lack of probable cause is separate from the constitutional arguments, the argument is deemed abandoned for purposes of the Motion to Dismiss. It is therefore respectfully RECOMMENDED to the District Court that Defendant's Motion to Dismiss (Doc. 18) be DENIED.

2. **Motion to Suppress (Doc. 19)**

Defendant moves to suppress the evidence collected by law enforcement on July 20, 2009 "on the grounds that law enforcement officials intentionally and/or recklessly omitted material information when they applied for the search warrant in this case." Doc. 19 at p. 1. Defendant's motion, therefore, is based solely on his assertion that the evidence is the fruit of the poisonous tree because the search warrant was invalid under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendant asserts he is entitled to a *Franks* hearing to show Special Agent Aramayo (who signed the warrant application affidavit) (1) omitted facts with the intent to make the affidavit misleading, or in reckless disregard of whether the omitted facts thereby made the affidavit misleading; and (2) that affidavit, if supplemented by the omitted facts, could not support a finding of probable cause.

Specifically, Defendant asserts Aramayo should have informed the Court that he (Defendant) was a "successful, well respected, practicing criminal defense attorney in South Dakota [who] handles all kinds of criminal cases, including rape, child molestation, domestic assault, and child pornography . . . the reviewing magistrate should have been informed as to the scope of Mr. Flynn's criminal defense practice. How many criminal cases did Mr. Flynn have? How many child pornography cases? How many sexual conduct cases? *This information was easily and readily obtainable.*[5]" Doc. 19 at p. 2. Defendant also asserts the Court should have been informed of SDCL 22-24A-19, because probable cause to search for child pornography cannot exist if the person

---

[5]Defense counsel attached a listing of the cases in which Defendant has served as counsel in federal court. None of them are child pornography cases. No similar list was provided for his state court cases, despite counsel's claim that this information was "easily and readily" obtainable and should have been provided by the search warrant affiant.

subject to the search is a criminal defense attorney who regularly defends those charged with possession of child pornography and a statute exists protecting attorneys from prosecution if they possess it while performing their official duties.

"A defendant is entitled to a hearing to determine the veracity of a search warrant affidavit if he . . . can make a substantial preliminary showing that a false statement was included in the affidavit (or that relevant information was omitted from it) intentionally or recklessly, and that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause." *United States v. Mathison*, 157 F.3d 541, 547-48 (8th Cir. 1998) (citations omitted). The requirement for a substantial preliminary showing is "not lightly met." *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987). A mere allegation in the absence of an affidavit of a witness or some other form of corroboration that the false statement was made knowingly, intentionally, or with reckless disregard for the truth, is insufficient to make the difficult preliminary showing. *Mathison*, 157 F.3d at 548, *quoting Franks*, 438 U.S. at 171, 98 S.Ct. at 2674. As explained in *Mathison*, merely identifying what one claims are the specific falsehoods in the affidavit without offering proof that the alleged falsehoods were deliberate or reckless is not enough. "When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required." *Mathison*, 157 F.3d at 548 (citations omitted).

In support of his Motion for *Franks* hearing, Defendant asserts that the affidavit in support of the search warrant should have advised the court of his "specialty" in dealing with child pornography law. Yet, only non-specific references have been furnished to support this claim that he has actually developed such a "specialty." Mere allegations are not sufficient. Likewise, the defense offered no evidence that law enforcement personnel (1) knew of his "specialty" or (2) knew that it was Leo Flynn's computer and not Brian Ahrendt's or John Pekas' computer that contained the child pornography for which they wished to search or (3) that Leo Flynn was known in the office as the "perv lawyer." Assuming SDCL 22-24A-19 is applicable to federal prosecutions, the defense argument is not understood to be that the statute provides immunity to all the lawyers in the building if only one of them possesses child pornography in the course of his "official duties."

The real issues to be determined are (1) whether the affidavit provided probable cause to search the premises for child pornography and (2) whether Defendant has provided evidence that Aramayo omitted any information from her affidavit in an intentional or reckless disregard for the truth. The defense has not argued that the affidavit, as it was presented, lacked probable cause. Regarding the *Franks* motion, a mere allegation that information was intentionally omitted is insufficient. "When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required." *Mathison*, 157 F.3d at 548 (citations omitted). For this reason, it is respectfully RECOMMENDED that Defendant's Motion to Suppress/for Franks Hearing be **DENIED.**

## CONCLUSION

For the reasons more fully explained above, it is respectfully recommended to the District Court that Defendant's Motion to Dismiss (Doc.18) and Motion to Suppress (Doc. 19) both be **DENIED**.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.
*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

Dated this __19__ day of March, 2010.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

14